COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Petty and Chafin
Argued at Lexington, Virginia

ANTHONY WADE RAGLAND

v.        Record No. 0294-16-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
MARCH 28, 2017

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

David A. Oblon (Albo & Oblon, L.L.P., on brief), for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Anthony Wade Ragland ("Ragland") appeals the February 18, 2016 decision by the

Circuit Court of Augusta County (the "trial court") convicting him of one count of possession of

a cellular telephone by a prisoner, in violation of Code § 18.2-431.1.  Ragland's three

assignments of error are that the trial court erred in (1) finding that Ragland possessed a "cellular

telephone" as opposed to an "other wireless telecommunications device," (2) finding that

Ragland possessed a cellular telephone during his period of incarceration, and (3) refusing to

take judicial notice of Federal Communication Commission ("FCC") documents.

I.  Background

In November 2014, Ragland was serving a sentence at the Middle River Regional Jail

(the "jail") in Augusta County, Virginia.  During the course of this sentence, Ragland was

enrolled in the jail's work release program.  Pursuant to his participation in this program,

Ragland signed an eight-page document, entitled "Work Release Rules and Regulations" (the

"Regulations").  Paragraph 62 of the signed Regulations noted, "Cellular telephones are not

permitted unless required by your employer. It is up to your employer to contact the Work Release Department if you need to have a cellular telephone." On November 16, 2014, Ragland was found with a cellular telephone in his possession after he passed the primary entrance to the jail. As a result, he was charged with one count of possession of a cellular telephone by a prisoner, in violation of Code § 18.2-431.1. Ragland was tried via a bench trial on November 30, 2015.

In summary, the Commonwealth's evidence at trial was that at approximately 9:45 p.m. on November 16, 2014, Ragland returned to the jail following his workday. Corporal David Gregory ("Gregory"), a jail security officer, testified that, as he prepared to commence Ragland's security "shake down," he observed Ragland holding a "brown lunch bag in his hand." Gregory asked Ragland "why he had the lunch bag?" In response, Ragland indicated that he intended to bring it with him into the jail. Gregory asserted that Ragland could not do this, and Ragland responded that he had been permitted to bring it in previously. Gregory explained that he would not allow it, as it was against the rules, and directed Ragland to throw the bag away.

Because Ragland "became kind of uneasy [and] didn't want to put [the brown lunch bag] in the trash," Gregory inspected its contents, finding what he believed was a cellular telephone underneath a sandwich. Upon this discovery, Gregory immediately asked Ragland "where he got the *cell phone*?" Ragland responded that "it was his" and claimed he had been told by Joanna Kay Shifflett ("Shifflett"), a work release specialist at the jail, that he "could bring it in [the jail]." Gregory told Ragland that he did not "believe Shifflett told [Ragland] that [Ragland] could have the phone." Gregory confiscated the cellular telephone and charged Ragland with having a cellular telephone or trying to introduce a cellular telephone into the jail.

At this point in the testimony, the Commonwealth submitted four photographs of the cellular telephone in question. Gregory identified the cellular telephone as being the one that he confiscated from Ragland. The photos were admitted into evidence without objection.

A couple days prior to his initial term of incarceration at the jail, Ragland called Shifflett to inquire about cellular telephones, explaining that he needed one for his employment with Martin's. At trial, Shifflett testified that she discussed the rules and regulations with Ragland prior to the service of his sentence.[1] Shifflett directed Ragland to have his supervisor call the jail, but indicated that it would be necessary for him to keep the cellular telephone secured at his place of employment, because he would not be permitted to bring a cellular telephone with him upon his return to the jail. Shifflett expressly denied that she ever told Ragland that he was permitted to bring a cellular telephone into the jail. Moreover, she noted that a large sign in the jail's work release area proclaimed the prohibition on possessing cellular telephones while in custody.

On cross-examination, Shifflett acknowledged that she could not testify as to whether Ragland's employer might have contacted one of her co-workers with respect to inquiring about arrangements for Ragland's use of a cellular telephone during his participation in the work release program. Nevertheless, she affirmed that even if Ragland's employer had made the necessary contact, the jail would not have approved Ragland's possession of a cellular telephone while in custody. She further noted that, while such determinations were made on a case-by-case basis, the jail had never approved an inmate's possession of a cellular telephone while in custody.

During Gregory's interrogation of Ragland when the cellular telephone was first discovered, Ragland told Gregory that he had brought the phone with him, because "Martin's

---

[1] The Regulations were admitted into evidence through Shifflett without objection.

would not allow him to have the cellular telephone." He further claimed that he kept the phone's charger at his place of employment. When Gregory asked Ragland why his employer would permit him to keep the phone's charger at work, but not the phone itself, Ragland simply replied, "You got me." Throughout this discussion both Gregory and Ragland referred to the item as either a "phone" or a "cellular telephone," and Ragland never asserted to Gregory or any other jail official that the item recovered from the bag was anything other than a cellular telephone.

On cross-examination, Gregory was asked to describe the layout of the entrance to the jail used by those inmates reporting in from the work release program. Gregory described an "initial entry area," through the jail's "main door," where visual searches of inmates are conducted, in an effort to detect obvious contraband. Next, he described the "secondary area" as the area where inmate strip searches are conducted. He explained that "you come in the primary entrance, then you go through another door, the locker room is in that area. We call it the mud room, but that's where the locker area is located." Gregory testified that the secondary area contains lockers for the storage of specified items "listed on the work release agreement" that are not permitted to be in the inmate's possession while in custody. Each inmate has his own lock for the locker room.

Gregory noted that his interaction with Ragland occurred in the initial entry area. Gregory testified definitively, "When you enter the primary door, you've entered the jail. We go ahead and do a visual search." Furthermore, he testified that contraband was prohibited in both the initial entry area as well as in the secondary area. He explained that jail staff members, in general, were prohibited from having cellular telephones in the jail, but certain authorized staff members could bring phones into either the primary or secondary locations employed by the work release program.

Gregory admitted that he did not make any phone calls from the device nor see Ragland using the device. Rather, upon finding the cellular telephone, Gregory saw that it was on and directed Ragland to turn it off. Next, Gregory confiscated the phone, logged it into evidence, and turned it over to Captain Robert Mowbray ("Mowbray").

Prior to Ragland's release from the jail for his original sentence, Mowbray informed Ragland of the intention to charge him with the inmate possession of a cellular telephone offense. Mowbray noted that Ragland was "upset" and "did not understand why he would be charged with possession of the phone." Mowbray testified that he then explained to Ragland both the law and jail policies that Ragland violated in bringing the cellular telephone into the jail. During this conversation, Ragland again never asserted the object in his possession was something other than a cellular telephone. Additionally, Mowbray stated as far as he knew no inmate has ever been permitted to bring a cellular telephone into the jail.

At the conclusion of the prosecution's case, Ragland moved to strike, arguing that the evidence failed to exclude the possibility that Ragland had been authorized to possess the cellular telephone and that the evidence failed to affirmatively establish that the item possessed was, in fact, a cellular telephone. Additionally, he argued that the cellular telephone was recovered prior to his entry into the housing portion of the jail because the lockers located in the jail's secondary screening area are contemplated for the storage of items that were appropriate for work release use, but which would otherwise be contraband within the facility. Accordingly, Ragland argued that, in possessing the cellular telephone, he had not gone beyond this location of the facility intended for that purpose.

The trial court rejected these arguments. In overruling the motion to strike the evidence, the trial court stated that it believed Shifflett when she testified that no one could bring a cellular telephone into the jail. Additionally, it found that Ragland did not prove that his employer had

requested that Ragland be allowed the use of a cellular telephone while working, as was required of the employer per the Regulations. With respect to whether the Commonwealth had established that the device was a cellular telephone, the trial court stated,

> Well we certainly don't have any expert testimony that this was a cell phone, but we do have the testimony of both Investigator Mowbray and Corporal Gregory, who testified it was a cell phone. [The trial court] rarely [has] expert testimony when somebody is speeding in a motor vehicle on the public highways [] to prove that in fact what was being driven was a motor vehicle. . . . [C]ell phones have sufficient currency these days that it doesn't take an expert to testify that it is what it is. Moreover, when Corporal Gregory was asking him about it, Mr. Ragland never indicated it wasn't a cell phone on the contrary, [Ragland] . . . acknowledged that it was [a cellular telephone] in his discussion about what Martin's permitted and did not permit.

The trial court also found that once an inmate came through the door of the jail the inmate is incarcerated and that the "secondary area" is a room to provide privacy for strip searches.

As evidence in his own defense, Ragland requested the trial court to take judicial notice of the version of Code § 18.2-431.1 in effect at the time of the offense because it did not include the language "or other wireless telecommunications device." Also, Ragland asked the trial court to take judicial notice under Rules of Evidence 2:201, 2:202, and 2:203 of three printed pages his counsel proffered were copied from the FCC website (https://www.fcc.gov/). The Commonwealth objected to the trial court's consideration of the proffered FCC evidence on authentication grounds.

The trial court sustained this objection after the following colloquy:

> [Defense Counsel]: Yeah uh, well to accept that this could be a fact as to whether there are different types of technology between cellular service, advance wireless service . . .

> [Trial Court]: But it isn't a fact, [counsel], just because the Federal Government says it's a fact.

> [Defense Counsel]: Well, it is an official publication of the government.

- 6 -

[Trial Court]:  Of the Federal Government which I barely recognize in this Courtroom.

[Defense Counsel]:  Well, but the Rules of Evidence does reference the United States – publications of the United States, that's 2203 and, you know, I believe that the Court should take Judicial Notice of that.  It's to the extent that it's in dispute as to the authenticity, you know the Court can go online right now and pull up the same data from a government website. . . .

. . . .

[Trial Court]:  [B]ased on what you have given me[,] is the Court shall take Judicial Notice on the contents of all official publications . . . , but how do I know that I'm looking at the right stuff? . . . I don't have a lot of confidence in uh, how do I know that what I'm looking at on the internet is an official publication?

[Defense Counsel]:  Well that's where Rule 2201 of the Rules of Evidence provides guidance.  It says that the Court may take Judicial Notice if- it's a matter of common knowledge and I take it that it's not common knowledge or two, capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

[Trial Court]:  Yeah, well I'm not buying that the internet is one of those sources.  I can find more misinformation on the internet than you can find accurate information on the internet.

[Defense Counsel]:  Yeah, I understand, but if you go to uh, FCC.gov., that – that's – that's a source. . .

[Trial Court]:  I'm unpersuaded.  I'm unpersuaded that FCC.gov is something that's binding on this Court.  I mean I'm not, I'm just telling you that I virtually guarantee you I could look up FCC. something or other and it could easily be a rogue site that I wouldn't have any idea.

Following the renewal of Ragland's motion to strike and closing argument, the trial court found sufficient evidence to find Ragland guilty of Code § 18.2-431.1.  The trial court found that Ragland had "a cellular telephone."  In making this finding the trial court stated, "This isn't an iPad, it is a Verizon 3G, three gigabyte cell phone."  Additionally, the trial court found that

Ragland was incarcerated. On February 18, 2016, Ragland was sentenced to six months of incarceration.

## II. Analysis

### A. Standard of Review

"When reviewing a defendant's challenge to the sufficiency of the evidence to sustain a conviction, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 858-59 (2014). This examination "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. . . . [A]n appellate court must consider all the evidence admitted at trial that is contained in the record." Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder. Commonwealth v. McNeal, 282 Va. 16, 22, 710 S.E.2d 733, 736 (2011).

An appellate court may reverse the judgment of the trial court "if the judgment 'is plainly wrong or without evidence to support it.'" Crawford v. Commonwealth, 281 Va. 84, 112, 704 S.E.2d 107, 123 (2011) (quoting Code § 8.01-680). "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Id. (quoting Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998)). The issue on appeal is whether the record contains evidence from which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319

(1979)). However, to the extent the appellant's assignment of error requires "statutory interpretation, it is a question of law reviewed *de novo* on appeal." Grimes v. Commonwealth, 288 Va. 314, 318, 764 S.E.2d 262, 264 (2014).

### B. Ragland's Possession of a Cellular Telephone

In challenging the sufficiency of the evidence, Ragland suggests a hypothesis of innocence that the phone at issue could have been a device operated by something other than cellular technology, thus he cannot be found in violation of Code § 18.2-431.1(B). In pertinent part, Code § 18.2-431.1(B) currently states, "It is unlawful for an incarcerated prisoner . . . without authorization to possess a cellular telephone or other wireless telecommunications device during the period of his incarceration." At the time of his offense however, the statutory provision only criminalized the possession of a "cellular telephone" by an incarcerated prisoner. Code § 18.2-431.1(B) (2015).

On appeal, Ragland argues that the legislature's use of the phrase "cellular telephone" is a "term of art" and that the evidence presented at trial was insufficient to establish the phone seized was not another variation of a telecommunication device, citing a "satellite phone" or "radiotelephone service" as specific examples. However, Code § 18.2-431.1, as it existed at the time of Ragland's offense, unambiguously criminalized the possession of a cellular telephone by an inmate in a state or local correctional facility but did not define the term "cellular telephone" thereby indicating that this phrase is not a term of art and that it intended the commonly understood definition of the term. The dictionary defines a cellular phone as "a telephone with access to a cellular radio system so it can be used over a wide area, without a physical connection to a network. Also called mobile phone." Oxford Living Dictionaries, http://en.oxforddictionaries.com.

An appellate court must "presume that the General Assembly, in framing a statute, chose its words with care." Smith v. Commonwealth, 282 Va. 449, 454, 718 S.E.2d 452, 455 (2011) (citing Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001)). When a statute's text is "clear and unambiguous, . . . courts are bound by the plain meaning of clear statutory language." Campbell v. Harmon, 271 Va. 590, 598, 628 S.E.2d 308, 312 (2006). Moreover, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Wood v. Commonwealth, 57 Va. App. 286, 306, 701 S.E.2d 810, 819 (2010) (internal citations and quotations omitted). In addition, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Case v. Commonwealth, 63 Va. App. 14, 23, 753 S.E.2d 860, 864 (2014) (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004)).

In this case, Ragland relies on his rejected evidence in the form of printed documents from the FCC website for the proposition that alternative communications technologies exist, which operate in a fashion similar to cellular telephones. Ragland contends that, because there might be a difference in the communication technology utilized, such devices are not cellular telephones as contemplated under the statute. Yet, even if considered by the trial court, the FCC evidence, standing alone, demonstrates nothing more than the existence of alternate technologies making mobile communications possible. Evidence of the existence of alternative communication technology in the abstract would not have any impact upon the specific determination about the device seized from Ragland, and, therefore, was not relevant to the issue of whether or not the device was sufficient to show that the device seized from Ragland was a cellular telephone.

In contrast, the record contains affirmative testimony from both Gregory and Mowbray that the phone seized from Ragland was a cellular telephone. Ragland did not object to the admissibility of such testimony, in which he might have challenged the correctional officers' basis for concluding the device possessed by Ragland was a cellular telephone. Additionally, when found in possession of the phone, and accused of its unlawful possession, Ragland never asserted that the device was anything other than a cellular telephone.

The trial court, in finding Ragland guilty, rejected his proffered hypothesis of innocence. Specifically, the court observed:

> I think the defense argument boils down to whether or not this was a cell phone. . . . I find that it is. This isn't an iPad . . . it is a Verizon 3G, three gigabyte cell phone. As I said, [the defendant's position] is much like having to have expert testimony to determine whether or not a motor vehicle riding down the road is a motor vehicle before which [sic] one can be convicted of reckless driving. . . . This is a cell phone and I find beyond a reasonable doubt that it is.

The trial court credited the testimony of Gregory and Mowbray identifying the device as a cellular telephone, and found that it did not require expert testimony for the purpose of making such an identification. This was not error. Moreover, the four Commonwealth photographic exhibits depict a device that is in common use bearing the Apple corporate logo and easily recognizable by virtually anyone who has not been in a coma or on a deserted island for the last decade as an Apple iPhone which has been turned on and shows a live connection to the Verizon cellular network.

Furthermore, "consciousness of guilt" generally is applied to affirmative acts of falsehood or flight immediately following the commission of a crime, which tend to show a person's guilty knowledge of, and participation in, a criminal act. Jones v. Commonwealth, 279 Va. 52, 57-58, 688 S.E.2d 269, 272 (2010). "Such acts . . . of deceitful behavior immediately following the commission of a crime, are acts that generally cannot be explained in terms of

innocent human behavior. Thus, when a defendant affirmatively acts in such a manner, a court may consider those acts in the context of all the facts presented as evidence tending to show the defendant's consciousness of guilt of the crime committed." Id. at 58, 688 S.E.2d at 272. Here, the trial court could reasonably have concluded Ragland lied when he told Gregory that his possession of the phone had been approved by Shifflett. Moreover, Ragland conceded that Gregory had "got [him]," when the irrationality of his claims about Martin's purported refusal to allow him to maintain the phone at his work site was exposed.

"While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). The trial court, acting as the fact finder, was permitted to consider Ragland's untruthfulness, his effort at concealing the telephone, and his ultimate concession that Gregory "got [him]" as evidence of the defendant's "consciousness of guilt." Therefore, the trial court's determination of Ragland's guilt based on the evidence cannot be said to be plainly wrong or without evidentiary support.

### C. Ragland's Possession of a Cellular Telephone while Incarcerated

Ragland also argues the trial court's determination that he possessed a cellular telephone "during the period of his incarceration" was error because the jail allowed inmates to store material required for work in lockers provided for that purpose. Thus, because he was intercepted prior to reaching the locker room, any conclusion that his possession of the cellular telephone occurred while he was incarcerated was incorrect.

Ragland maintains that he had permission to possess a cellular telephone during his participation in the work release program and that he would have to keep his phone locked up somewhere. However, viewing the evidence in the light most favorable to the Commonwealth,

as we must since it was the prevailing party below, this assertion is not supported by the trial record. First, Shifflett testified that she explained to Ragland that his employer would have to make arrangements concerning his possession of a cellular telephone, and, if approved, any cellular telephone would be required to remain at his place of employment. Second, the record lacks any evidence demonstrating that Ragland's employer obtained permission for him to possess a cellular telephone during his employment hours, and Shifflett affirmatively contradicted Ragland's assertion that she had authorized him to possess the cellular telephone while in the jail.

The evidence affirmatively established that cellular telephones were not permitted in the facility at all, beginning at the primary door leading into the initial entry area. Moreover, by rejecting Ragland's motion to strike, the trial court credited the testimony of Shifflett and highlighted Ragland's inconsistency in his explanation of his use of a cellular telephone for work. Finally, regardless of the existence of a locker room, in which certain items required for work release could be stored by inmates so enrolled, no evidence demonstrated that Ragland, or any inmate, was permitted to bring a cellular telephone into the facility. Therefore, we hold that the trial court's decision that Ragland was "incarcerated" at the time the cellular phone was discovered about his person was not plainly wrong or without evidence in support.

D. Admission of Evidence: FCC Documents

Ragland argues the trial court erred in refusing to admit the proffered portions of the "FCC Encyclopedia." "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Gonzales v. Commonwealth, 45 Va. App. 375, 380, 611 S.E.2d 616, 618 (2005) (*en banc*) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). Where a decision is reviewed for an abuse of discretion, the appellate court does not substitute its own

judgment "for that of the trial court," but considers "only whether the record fairly supports the trial court's action." Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (citation omitted).

At trial, Ragland attempted to introduce printed documents, purportedly from FCC's website, in support of his argument demonstrating the existence of multiple forms of communications technology that operate similarly to cellular telephone service. The Commonwealth objected to the documents' admission on authenticity grounds, which the trial court sustained. The trial court declined defense counsel's request for it to take judicial notice of the documents. Citing a specific concern that if it resorted to finding the proffered information on the internet, the trial court could not guarantee the material had not somehow been altered and under such circumstances it might be directed to "a rogue site [it] would not have any idea."

Code § 19.2-265.2(A) authorizes a court in a criminal case to take notice of law "statutory or otherwise," but leaves it up to the court to determine if "it becomes necessary" to take judicial notice. However, the most elementary first step is that "[e]vidence must be relevant to be admissible. It is relevant if it has 'any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.'" Payne v. Commonwealth, 65 Va. App. 194, 217, 776 S.E.2d 442, 453 (2015) (quoting Va. R. Evid. 2:401). "[E]very fact, 'however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 753 (quoting Va. Elec. & Power Co. v. Dungee, 258 Va. 235, 260, 520 S.E.2d 164, 179 (1999)), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). "Put another way, evidence has relevance if it tends to cast any light on any material point." Id. at 753, 607 S.E.2d at 743-44. We find that the information proffered by Ragland was irrelevant as to whether the device at issue was actually a cellular telephone. The proffered evidence would

have simply provided the trial court with information that other technology existed and would not have proven or disproven anything with respect to the nature of the device in question. Ragland did not proffer any evidence demonstrating that the phone seized was not a cellular telephone. Therefore, the trial court did not err in refusing to admit the proffered portions of the "FCC Encyclopedia."

### III. Conclusion

We conclude that the trial court did not err in finding that Ragland possessed a "cellular telephone" as opposed to an "other wireless telecommunications device." Ragland possessed a cellular telephone in the jail facility without permission. Further, it was not error for the trial court to refuse to take judicial notice of the proffered FCC documents. Therefore, the trial court properly convicted Ragland of one count of possession of a cellular telephone by a prisoner, in violation of Code § 18.2-431.1.

Affirmed.