COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Athey and Callins
Argued at Virginia Beach, Virginia


TRAVIS CASEY SCHAFER

                                            MEMORANDUM OPINION[*] BY
v.       Record No. 0255-22-1           JUDGE CLIFFORD L. ATHEY, JR.
                                                NOVEMBER 1, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Matthew A. Glassman, Judge

Brittany T. Barnes, Assistant Public Defender, for appellant.

Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


      Travis Casey Schafer ("Schafer") was convicted in the Circuit Court of the City of Suffolk

("trial court") of grand larceny of a motor vehicle, in violation of Code § 18.2-95, and was

sentenced to two years and eleven months' incarceration. Schafer challenges the sufficiency of the

evidence in support of his conviction. He also contends that the trial court abused its sentencing

discretion. For the following reasons, we affirm.

I. BACKGROUND

      On June 7, 2020, Schafer was picked up and transported by his friend, Annette DeRenzo

("DeRenzo") to her residence. Later that evening, Schafer, DeRenzo, and her daughter attended a

birthday party held at the home of DeRenzo's next-door neighbor. Sometime between 10:30 p.m.

and 11:30 p.m., DeRenzo and her daughter left the birthday party and returned to their home next

door. Before leaving, DeRenzo advised Schafer, who remained at the party for about one additional

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

hour, that he could stay at her home overnight. Schafer subsequently advised the host of the party that he intended to travel to Bristol the following morning. When DeRenzo left the party to return home, her 1999 black Ford Explorer was parked on her property.

At trial, DeRenzo testified that upon arriving home, she left the keys to the Explorer on her dining room table and then went to bed. Her car keys were attached to a bright, neon green ChapStick holder. When she awoke the following morning between 6:00 a.m. and 7:00 a.m., there was no trace of Schafer, and her car keys were missing. DeRenzo was neither asked nor did she give anyone permission to drive the Explorer, which was also missing. DeRenzo testified that she was not awakened by her dogs that night. But since her dogs knew Schafer and would only bark in the presence of a person they did not know, she believed no one else entered the house. Her next-door neighbor also testified that the Explorer was gone when she walked her dog at 5:30 a.m. the following morning. Upon discovering that the Explorer was gone, DeRenzo immediately called the police and reported the theft of the vehicle. DeRenzo tried to call Schafer that morning, but he did not respond until later that day. Schafer denied taking the Explorer.

Since Schafer had lived in western Virginia, over the next two weeks, DeRenzo contacted several law enforcement agencies and impound lots in western Virginia trying to locate the Explorer. She eventually located her Explorer on June 22, 2020, and rented a trailer to retrieve the vehicle from an impound yard in Bristol. After she brought the Explorer back to her home, she called the detective assigned to her case. They discovered that the inside of the vehicle was "trashed" and contained clothing, a suitcase with petri dishes, and other "junk" that did not belong to DeRenzo or her daughter. DeRenzo also found her green ChapStick holder underneath the backseat. During cross-examination, DeRenzo acknowledged that the Explorer had been used by someone other than Schafer in a crime in Bristol.

Schafer testified in his own defense. He denied taking the Explorer and claimed he did not notice if the vehicle was still in DeRenzo's yard when he left the birthday party. Schafer testified that he did not answer DeRenzo's initial call because he was sleeping, but that when he returned the call, he told her that he did not take her Explorer and was living nearby in Ocean View. The trial court convicted Schafer of grand larceny of a motor vehicle and continued the case for sentencing.

At the sentencing hearing, Schafer proffered that he worked in landscaping and had also started a tattooing apprenticeship before his arrest. He lost both opportunities, but was hopeful he could acquire similar opportunities after his release. Schafer also proffered that he had served as a trustee and barber at the jail. Along with the loss of his employment after the arrest, he advised the trial court that he had lost his home and his fiancée. Schafer asked the trial court to consider a sentence between time served and the low end of the guidelines.[1] The Commonwealth argued that because Shafer had two prior convictions for grand larceny and twelve prior felony sentencing events, a sentence between the midpoint and the high end of the sentencing guidelines was appropriate.

Schafer declined to make a statement in allocution. The trial court found that, after considering all the evidence, Schafer was not credible, had taken no responsibility, and showed no remorse. The trial court also found that based on Schafer's criminal history, he was not amenable to supervision. The trial court sentenced Schafer to two years and eleven months' incarceration, with no time suspended. This appeal followed.

## II. ANALYSIS

Schafer argues that the trial court erred in convicting him of grand larceny because the evidence was insufficient to prove he stole the Explorer. Alternatively, he argues that the evidence

---

[1] The sentencing guidelines recommended a sentence between one year and one month and two years and eleven months' incarceration.

failed to prove that he had the requisite intent to permanently deprive DeRenzo of her property. Finally, Schafer argues that the trial court abused its discretion in imposing its sentence.

## A. *Criminal Agency*

Schafer argues that the trial court erred in convicting him of grand larceny because the evidence was insufficient to prove that he was the one who stole the Explorer. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). As with any element of an offense, identity may be proven by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "[C]ircumstantial evidence [must be] sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). This principle, however, "does not add to the burden of proof placed upon the Commonwealth in a criminal case." *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the

evidence, not those that spring from the imagination of the defendant." *Ragland v. Commonwealth*, 67 Va. App. 519, 531 (2017) (quoting *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014)).

Here, the totality of the circumstantial evidence supports the trial court's conclusion that Schafer stole the Explorer. When DeRenzo arrived home from the party, the keys to the Explorer were plainly visible on her dining room table before she and her daughter went to bed. At trial, Schafer admitted that he entered DeRenzo's house about an hour later to retrieve his belongings and charge his phone before leaving the home around 4:30 a.m. Nothing in the record suggests that anyone else came into the house between 4:30 a.m. and 5:30 a.m. who could have taken the keys. DeRenzo's dogs, who were familiar with Schafer, did not bark as they would have if a stranger had entered the house, and by 5:30 a.m., DeRenzo's neighbor, while walking her dog, noticed that the Explorer was gone. DeRenzo finally located the Explorer a few weeks later in an impound lot in Bristol where Schafer said he was going after the party.

Schafer's allegations that another partygoer could have taken the Explorer or the fact that the Explorer was subsequently involved in a crime in Bristol that did not involve him did "not add to the burden of proof placed upon the Commonwealth." *Hudson*, 265 Va. at 513. No evidence contained in the record demonstrated that another partygoer entered DeRenzo's house, and the Commonwealth need only exclude those hypotheses that "flow from the evidence." *Ragland*, 67 Va. App. at 531. Moreover, the trial court was entitled to reasonably infer that once DeRenzo accused Schafer of stealing the Explorer, Schafer either gave or sold the Explorer to the person who used it in the crime before abandoning the vehicle altogether in Bristol.

B. *Intent to Permanently Deprive*

Alternatively, Schafer argues that the trial court erred in convicting him because the evidence was insufficient to prove that he intended to permanently deprive DeRenzo of her property. Schafer, however, failed to preserve this argument for appellate review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Schafer did not present his "intent to deprive" argument to the trial court by renewing that motion to strike at the conclusion of all the evidence. Schafer's only argument during the motion to strike at the conclusion of all the evidence and during his closing argument was that he was not the criminal agent who took the Explorer and the evidence adduced in the case was entirely circumstantial. Thus, he did not apprise the trial court of this argument by renewing it. *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). Schafer also does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Thus, Rule 5A:18 bars our consideration of this assignment of error on appeal.

C. *Schafer's Sentence*

Schafer also contends that the trial court abused its discretion when it sentenced him to two years and eleven months' imprisonment with no time suspended, a post-release term of three years with post-release supervision of three years, and good behavior for five years. We disagree.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). It is well established that "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined

that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, Schafer's sentence was within the range set by the legislature. *See* Code § 18.2-95.

Schafer argued that the trial court should not have been allowed to consider his lack of remorse in determining his sentence. However, it was within the trial court's purview to weigh all the evidence presented at sentencing. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The record shows that the trial court considered all the mitigation evidence, including Schafer's argument that his opportunities had been stalled because of his incarceration, that he was a trustee at the jail, and had lost his home and fiancée after his arrest. However, the trial court was well within its discretion to also balance that mitigation evidence and Schafer's argument for leniency with aggravating factors including Schafer's lack of credibility, lack of remorse, and prior criminal history that reflected that he was likely not amenable to supervision. After considering all the circumstances, the trial court imposed the sentence that it deemed appropriate. Hence, Schafer's sentence was "within the statutory range, and our task is complete." *Thomason*, 69 Va. App. at 99.

III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

- 7 -