COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Athey and White
Argued at Salem, Virginia


JEREL BLAKE SMALS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0066-22-3                      JUDGE KIMBERLEY S. WHITE
                                                    DECEMBER 29, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Michelle C.F. Derrico, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Jerel B. Smals appeals his convictions, following a bench trial, for statutory burglary and

misdemeanor assault and battery, in violation of Code §§ 18.2-91 and 18.2-57. Smals asserts that

the evidence was insufficient to prove that a breaking occurred and that the Commonwealth's

witnesses were inherently incredible. For the following reasons, we disagree, and affirm the

convictions.

BACKGROUND

On appeal, we review the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard

the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

On January 15, 2021, David Lotts[1] and his girlfriend, Melissa Garrett, were eating dinner in his home when someone knocked on the front door. Lotts opened the door and unexpectedly found Smals. Lotts was familiar with Smals because Smals was Garrett's former boyfriend. Smals had come to Lotts's home several days earlier urging Lotts to treat Garrett well.

On January 15, Smals asked to speak to Garrett outside, but Garrett refused. Smals became emotional, put his head in his hands, and knelt. Lotts allowed the door to swing shut, leaving Smals on the front stoop, and returned to his recliner to watch television. Lotts explained that the door would swing shut if no one was holding it and that the door was "[m]ostly glass bordered by wood like the wooden frame with glass in the middle."

Without warning, Smals kicked through the door's window and "the door swung back open." Lotts drew his nine-millimeter handgun and told Smals to leave. Smals asked Lotts "are you going to shoot me" before he charged Lotts bringing him to the ground. The pair continued to grapple on the floor. During the struggle, Lotts fired a round, which grazed Smals's ear and hit the wall next to the front door. Smals fell to the floor as Lotts returned to his feet and demanded Smals leave his home. Smals complied and drove away in his vehicle. Unsure of what to do, Lotts and Garrett fled to Garrett's parents' home in Buena Vista. There, Garrett called 911.

Rockbridge County Police Corporal Willard responded to the call and observed that the front door's large pane window was broken and that a substantial amount of glass was on the front stoop. Corporal Willard and Investigator Flint secured and photographed the scene. Investigator Flint found a shell casing underneath the refrigerator and a round in the wall behind

---

[1] At trial Melissa Garrett interchangeably referred to Lotts by his first name, David, and his middle name, Matthew.

the door. Corporal Willard opined that the door was likely open when the shot was fired because there appeared to be a bullet hole through the window and the window blind.

While photographing the scene, Corporal Willard directed officers to look for Smals at his residence.[2] After officers located Smals and transported him to the sheriff's office, he admitted that he was at Lotts's home that evening and that he and Lotts had wrestled each other. Smals, however, denied that a firearm had been involved. Smals indicated that he had spoken with Garrett earlier that day and had planned to meet up with her. When Garrett did not appear, he went to Lotts's home to speak with her. Investigator Flint photographed Smals during the interview and noted that Smals appeared to have a graze or burn injury on his ear.

The trial court found Lotts and Garrett more credible than Smals. The court opined that "it is a mystery about the glass," and noted that the witnesses' "testimony was more significant than the physical evidence."[3] The trial court convicted Smals of statutory burglary and misdemeanor assault and battery. Smals appeals.

STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204,

---

[2] Corporal Willard was familiar with Smals and knew that he often stayed at a residence close to Lotts's home.

[3] Smals denied kicking in the glass door and argued that the physical evidence of the broken glass being *outside* the door frame clearly showed the door was not kicked *in*, instead proposing that a combination of the door being shot then slammed resulted in the glass breaking.

228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). "In a bench trial, the trial judge's 'major role is the determination of fact, and with experience in fulfilling that role comes expertise.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004)). "Under our standard of review, a factfinder may draw reasonable inferences from basic facts to ultimate facts, and those inferences cannot be upended on appeal unless we deem them so attenuated that they push into the realm of *non sequitur*." *Perkins*, 295 Va. at 332 (internal quotation marks omitted) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 (2015)).

ANALYSIS

A. Credibility

Smals contends that the physical evidence proves that Lotts's and Garrett's testimony was inherently incredible. Smals argues that the physical evidence disproves Lotts's testimony that Smals broke in by kicking the front door's glass and that the door closed automatically. He suggests that if the door had been kicked in from the outside, glass would have fallen inside the home. Additionally, he concludes that because "[t]here was a bullet hol[e] in the glass door that

passed through the blind covering the glass and lodged into the wall behind," the door must have been open for the bullet holes to be in those locations, and the door did not automatically close as Lotts testified. Finally, Smals notes that this Court has found witnesses to be inherently incredible when, as here, they leave the scene and delay reporting the incident. He argues that because Lotts and Garrett left the scene and their testimony conflicts with the physical evidence, their testimony was inherently incredible and cannot support his convictions.

"An appellate court 'must accept the trial court's determination of the credibility of witness testimony unless, as a matter of law, the testimony is inherently incredible.'" *Hammer*, 74 Va. App. at 239 (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.*; *see Juniper v. Commonwealth*, 271 Va. 362, 415 (2006). "Consequently, as Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Kelley*, 69 Va. App. at 626 (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). "'[T]here can be no relief' in this Court if a witness testifies to facts 'which, if true, are sufficient' to support the conviction '[i]f the trier of the facts' bases its decision 'upon that testimony.'" *Id.* (quoting *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010)).

Witness testimony will not be found inherently incredible "unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper*, 271 Va. at 415). We will not disturb a trial court's finding that a witness was not inherently incredible unless that determination is

"plainly wrong or without evidence to support it." *Hammer*, 74 Va. App. at 240 (quoting *Elliott v. Commonwealth*, 277 Va. 457, 463 (2009)).

Smals cannot meet that standard here. The trial court, acting as the fact finder, found that Lotts and Garrett were more credible than Smals. Lotts testified that he and Garrett were at his residence when Smals arrived uninvited. Lotts answered the door, and Smals asked to speak with Garrett. Garrett did not want to speak with Smals or go outside. Lotts observed Smals become emotional. Lotts released the door, allowing it to close, and returned to his recliner. Moments later, Lotts observed Smals kick in his front door's window. Instantaneously, Lotts retrieved his handgun and ordered Smals to leave. Smals told Lotts to "shoot [him] in the fucking head" as Smals advanced and struck Lotts. The two men grappled with each other, and during the struggle, Lotts fired his handgun, which grazed Smals's ear and hit the wall next to the front door. As Smals dropped to the floor Lotts demanded Smals leave his home. Eventually, Smals complied.

Lotts's testimony was corroborated by Garrett who confirmed that Smals had arrived at the house unannounced. When Lotts answered the door Smals asked to speak with Garrett outside, but she declined. Garrett also saw Smals become emotional as Lotts shut the door and returned to his chair. Garrett recalled a loud noise and saw the door open and Smals come inside. A struggle ensued between Smals and Lotts. Garrett observed Lotts had his handgun, and moments later she heard a gunshot. She then saw Smals drop to the ground and heard Lotts demand Smals leave.

The trial court did not err in refusing to find the testimony of Lotts and Garrett inherently incredible. Nothing compelled the trial court to find Lotts's and Garrett's testimony "so manifestly false" that it could not be believed, nor was their testimony "shown to be false" by

- 6 -

evidence on which reasonable persons could not differ.  *See Gerald*, 295 Va. at 487; *Hammer*, 74

Va. App. at 240.  The record supports the trial court's credibility determination.

## B.  Breaking

Smals contends that the Commonwealth failed to prove a breaking occurred.  He argues

that the physical evidence proved that the front door's glass was broken by a bullet hole.  The

evidence proves, he argues, that he stepped through an open door and, consequently, the

Commonwealth failed to prove a breaking occurred and the evidence is insufficient to sustain his

burglary conviction.

"[I]f any person commits any of the acts mentioned in § 18.2-89[4] or § 18.2-90[5] with

intent to commit assault and battery, he shall be guilty of statutory burglary."  Code § 18.2-91.

Although Code §§ 18.2-91 and 18.2-90 do not require proof of a breaking where, as here, the

charged offense occurred at night, the Commonwealth acknowledges that the indictment

narrowed the statutory language and alleged that Smals broke and entered the residence.  Where

an indictment includes "specific, narrowing language 'descriptive of the offense charged,'" the

Commonwealth must prove the offense as charged.  *Purvy v. Commonwealth*, 59 Va. App. 260,

269 (2011) (quoting *Commonwealth v. Nuckles*, 266 Va. 519, 523 (2003)).  Accordingly, the

Commonwealth concedes that it was required to prove that a breaking occurred.

"A 'breaking' under burglary law can be 'either actual or constructive.'"  *Pooler v.*

*Commonwealth*, 71 Va. App. 214, 223 (2019) (quoting *Lay v. Commonwealth*, 50 Va. App. 330,

334 (2007)).  "Actual breaking requires the use of physical force."  *Id.* at 222 (quoting *Lay*, 50

---

[4] "If any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary."  Code § 18.2-89.

[5] "If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . with intent to commit murder, rape, robbery or arson in violation of §§ 18.2-77, 18.2-79 or § 18.2-80, he shall be deemed guilty of statutory burglary."  Code § 18.2-90.

Va. App. at 334-35). "Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime." *Id.* "[A] person does not 'break' into a dwelling when they have permission to enter the dwelling and act in accordance with that permission." *Id.*

Here, the evidence proved that Smals arrived unannounced at Lotts's residence and when Garrett declined to speak with him or go outside, Smals became emotional. Lotts released the door, allowing it to shut. Without permission or warning, Smals kicked the door, breaking the glass, and entered the residence. Lotts retrieved his handgun and ordered Smals to leave, but Smals rushed forward and struck Lotts. During the ensuing struggle, Lotts fired his gun, grazing Smals's ear and hitting the wall next to the front door. The evidence is sufficient for a reasonable fact finder to conclude that Smals broke and entered the residence with the requisite intent. We will not disturb the trial court's findings of fact on appeal.

CONCLUSION

For the foregoing reasons, we hold that the evidence was sufficient to convict Smals of statutory burglary and misdemeanor assault and battery. Accordingly, we affirm the trial court's verdict.

*Affirmed.*