# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Athey and Fulton

WESLEY ALLEN GLENN

v.      Record No. 1626-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 24, 2023

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

(Michael A. Nicholas; Daniel, Medley & Kirby, P.C., on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.

Wesley Allen Glenn ("appellant") appeals his conviction, following a jury trial, for animal

cruelty, in violation of Code § 3.2-6570. Appellant asserts that the evidence is insufficient to

support his conviction because the Commonwealth's own evidence was in conflict. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

For the following reasons, this Court affirms the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On August 12, 2021, Monice Barbour and Travis Michael lived together in Pittsylvania County with their dog Titus, a one-and-a-half-year-old Australian Shepherd-Alaskan Malamute mix. Abbey Bogert resided directly across the street from Barbour and Michael. Appellant resided two lots to the right of Bogert on the same side of the street. A trailer on the lot between appellant and Bogert stood in a recessed position, granting Bogert an unimpeded view of appellant's front yard from her front porch. Bogert had several dogs, including an outdoor dog named Rollie.

As Bogert arrived home on August 12, 2021, she noticed several workmen completing a job in the road. She also saw Titus and another dog playing with Michael in Michael's yard; her dog Rollie joined them to play with Titus and the second dog. Concerned with how the dogs would interact with the men working nearby, Bogert watched the dogs intently.

Bogert saw the three dogs travel in a tight pack from Michael's yard to her yard, through the trailer's lot, to the upper left corner of appellant's lot near the road. Bogert noted that appellant's driveway was U-shaped and that he kept an old truck parked on the side of the house. Suddenly, Bogert heard a gunshot to her right which she believed came from appellant's front porch. Although Bogert did not see who fired the shot, she saw Titus instantly hit the ground while Rollie and the other dog ran away. Seconds later, Titus got up and ran home towards Michael's yard. Because Titus got up so quickly, Bogert did not realize Titus had been shot at that time. In the meantime, Rollie arrived on Bogert's front porch and shivered in the corner.

_____

[1] On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires this Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Barbour arrived home shortly thereafter to drive Michael to a dentist appointment. As she pulled into her driveway, Grams—a neighbor—flagged her down.[2] Grams informed Barbour that Titus was at her house and something was wrong with him. Barbour followed Grams home and found Titus on the concrete in front of Grams's front door. Barbour then returned home to retrieve Michael.

Upon arriving at Grams's home, Michael found Titus on a large pillow outside Grams's front door looking "really tired and out of it." As Michael got closer to Titus he saw "blood was dripping off [Titus's] chest" and a hole "on the back of his shoulder and one on the front of his chest." Titus tried to stand but he could not put pressure on his left leg. Michael carried Titus back home and then called the vet. The vet instructed Michael and Barbour how to clean the wound and stop the bleeding. The treatment was successful, and Titus survived. Appellant never spoke to Barbour and Michael about the shooting. Nor did he admit to Bogert that he shot at the dogs or apologize for shooting near Rollie.

The next day Bogert learned that Michael was investigating whether any neighbors knew what had happened to Titus. Because she was away on vacation, Bogert told her boyfriend what she had seen and directed him to tell Michael.

On August 13, 2021, Animal Control Officer J.L. Keatts and Sheriff's Deputy Laura Edmiston were dispatched to Barbour and Michael's home to investigate Titus's shooting. After speaking with Barbour and Michael, who relayed what Bogert's boyfriend had told them, the officers went to appellant's home.

When the officers asked appellant who shot the dog, appellant replied "does it matter?" Eventually, appellant admitted that he shot Titus with his 1911 45 caliber firearm because Titus was attacking his cat, Vada, who died from her injuries. He even told Officer Keatts that he had

---

[2] The record does not contain Grams's full legal name.

previously warned Titus's owners that he would shoot the dog if it came back onto his property. When asked to produce the firearm, appellant complied. Officer Keatts then asked appellant where the dead cat was and if he had any pictures of the cat. Appellant stated he had no photographs of Vada's injuries and that he had disposed of Vada in the woods behind his home. Officer Keatts asked appellant to show him where appellant claimed he had disposed of the cat. Appellant led Officer Keatts and Deputy Edmiston to an area 20 feet inside the wood line and pointed in the direction he believed he tossed the cat. The trio looked in the area appellant indicated but found no evidence of a dead cat.

While walking back to the house, Officer Keatts asked appellant where Titus maimed Vada and where Titus was shot. Appellant indicated that the maiming occurred halfway up his paved driveway in front of his truck. Officer Keatts and Deputy Edmiston scoured the area for blood or fur but found no evidence of a struggle in that location, and appellant never indicated that he had cleaned or washed the area after the incident. Officer Keatts then searched the woods again but never found a dead cat.

While standing in front of the officers, appellant asked his three-year-old son if he remembered what happened to Vada. Appellant's son indicated that Vada was in the woods but insisted that she was not dead. Appellant's wife, who was also present for this conversation, did not correct the child. At trial, Officer Keatts and Deputy Edmiston testified that appellant appeared irritated the entire time they questioned him. Bogert also testified that she never saw a cat during the shooting incident, nor did she observe appellant or anyone else go behind appellant's home and throw a cat into the woods.

At the close of the Commonwealth's evidence, appellant moved to strike the charge. Appellant argued that the Commonwealth had failed to establish a prima facie case of animal cruelty. He asserted the evidence showed that he shot Titus while Titus was attacking his cat, Vada.

Thus, he maintained that the trial court should strike the charge because the Commonwealth's case-in-chief was in conflict with itself. The trial court denied the motion.

Appellant then testified in his own defense. He stated he heard a noise outside his house at approximately 12:00 p.m. on August 12, 2021. When he looked to see what it was, he saw Titus and a pit bull running through his yard. According to appellant, Titus had Vada in his mouth while the pit bull attempted to grab the cat from Titus. Appellant retrieved his firearm, stepped off his porch, and shot Titus from a distance of about 20 to 30 feet. He claimed that Titus dropped Vada in front of his truck, which was parked half-way up his driveway, before running off. As appellant approached Vada, he could tell she was already dead. He testified that he left Vada in the driveway for three hours before taking her body behind his house and throwing her into the woods. Appellant admitted he did not contact animal control about Vada's death or notify Barbour or Michael about Titus's maiming of Vada.

Appellant testified that he was agitated, angry, and upset when officers arrived at his house the following day to question him about the shooting. He further asserted that the officers attempted to enter his home without permission when he went to retrieve his firearm at their request. Additionally, appellant claimed the officers had attempted to talk to his young son about the shooting, but that his son was unable to talk in intelligible sentences. Appellant acknowledged that, during the interaction with the officers, his son stated that Vada was not dead, but appellant claimed at trial that his son had been mistaken.

On cross-examination, appellant admitted that Titus was not attacking a person when he fired his weapon. He maintained that the only reason he shot Titus was because Titus was attacking his cat. Appellant admitted, however, that neither he nor his wife took pictures of the cat's alleged injuries, and he stated that his wife did not see him dispose of the cat's body in the woods. Nevertheless, appellant asserted that his wife knew he had thrown Vada into the woods behind their

- 5 -

house. Appellant further admitted that when he and the officers searched for Vada in the woods, they could not find any traces of her body. Similarly, when he and the officers examined the part of the driveway where Vada had allegedly been attacked, they failed to find any blood, fur, or other evidence indicating that there had been a dead cat in that location within the past 24 hours.

After appellant denied having ever told Barbour or Michael that he would shoot Titus if the dog went onto his front yard, the Commonwealth recalled Officer Keatts to rebut appellant's testimony. Officer Keatts testified that appellant had told him on August 13, 2021, that appellant had warned Michael and Barbour, prior to August 12, 2021, that he would shoot Titus if Titus came into his yard again.

At the close of all the evidence, appellant renewed his motion to strike. He argued that the evidence proved Titus attacked Vada and that appellant had used reasonable and necessary force to stop the attack. He further argued that the Commonwealth had failed to establish a prima facie case of animal cruelty. The trial court denied appellant's renewed motion to strike. After its deliberations, the jury convicted appellant of animal cruelty and the trial court sentenced him to three years' incarceration with the entirety of his sentence suspended. This appeal followed.

ANALYSIS

Appellant raises a sufficiency argument on appeal, asserting that no reasonable fact finder could have concluded that he committed animal cruelty.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204,

228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To obtain a felony conviction for animal cruelty, the Commonwealth must prove the defendant "willfully inflict[ed] inhumane injury or pain" to "any dog . . . that is a companion animal" and "as a direct result causes serious bodily injury to such dog[.]"  Code § 3.2-6570(F).[3]

Appellant argues that, in attempting to discredit his version of events, the Commonwealth presented evidence that appellant shot Titus because Titus attacked his cat.  He asserts that this evidence, if believed, discredited the Commonwealth's own evidence that he shot Titus in fulfillment of his prior threat because the dog entered his yard again.  Consequently, appellant maintains, the trial court should have granted his motion to strike because the Commonwealth's evidence was in conflict with itself.  As such, it was insufficient to prove his guilt beyond a reasonable doubt.

However, appellant ignores the fact that the Commonwealth's evidence did not affirmatively prove that the alleged attack on Vada had actually occurred.  Rather, the evidence was offered to undermine appellant's own credibility regarding the cause of the shooting.  Appellant was the only person who claimed that Titus had attacked his cat, and he only did so

---

[3] "Companion animal" is defined as "any domestic or feral dog . . . or any animal under the care, custody, or ownership of a person."  Code § 3.2-6500.  For purposes of this offense, "'serious bodily injury' means bodily injury that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty."  Code § 3.2-6570(F).

- 7 -

*after* officers started questioning him about the shooting based on other witness statements. Indeed, the police investigation confirmed the total absence of any physical evidence to support appellant's claim that Titus attacked and killed Vada or anyone else. To the contrary, the Commonwealth's eyewitness testified that Titus was shot while playing innocently with two other dogs in appellant's front yard and there was no cat in sight.

In finding appellant guilty, the jury credited the Commonwealth's version of events and rejected appellant's self-serving testimony. "[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Here, the evidence established that appellant shot Titus while the dog was in his front yard and playing with other dogs. In doing so, appellant carried out his earlier threat to shoot Titus if the dog entered his property again. Furthermore, by finding appellant guilty, the jury resolved any potential inconsistences in the evidence in the Commonwealth's favor. Viewing the evidence in the light most favorable to the Commonwealth, this Court holds that a reasonable fact finder could conclude that appellant shot Titus without just cause.

## CONCLUSION

For the foregoing reasons, this Court finds that the evidence was sufficient to convict appellant of animal cruelty. Accordingly, this Court affirms the trial court's decision.

*Affirmed.*