COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff,* Causey and White
Argued by videoconference

UNPUBLISHED

TONY JAMES WOODLEY

MEMORANDUM OPINION** BY
v.        Record No. 0628-23-2                    JUDGE DORIS HENDERSON CAUSEY
                                                   MARCH 11, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Trevor Jared Robinson for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Tony James Woodley appeals his convictions, following a bench trial, for aggravated

malicious wounding, grand larceny, reckless driving, and driving on a suspended license, in

violation of Code §§ 18.2-51.2, 18.2-95, 46.2-852, and 46.2-301.  On appeal, Woodley argues

that the evidence was insufficient to prove aggravated malicious wounding and grand larceny and

that there was a fatal variance between his indictment for grand larceny and the Commonwealth's

proof at trial.  He further argues that the trial court erred when it sentenced him to 18 years of active

incarceration and when it suspended his driver's license for 99 years or indefinitely.  We affirm the

convictions and Woodley's sentence, but we remand to the trial court for the limited purpose of

correcting the period of Woodley's license suspension.

---

* Judge Huff participated in the hearing and decision of this case prior to the effective
date of his retirement on December 31, 2024.

** This opinion is not designated for publication.  *See* Code § 17.1-413(A)

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In 2017, Jack Small (Jack) and his brother, Peter Small (Peter), owned an asphalt paving business. Woodley was one of the Smalls' employees. On December 13, 2017, Jack and his employees paved a driveway for a client. As the project neared completion, the client paid Jack $5,700 in cash. Jack noted that the client made a show of paying him, causing his employees to notice. Jack stored the money in his truck's console near his Rolex watch. Before the driveway was finished, Woodley informed Jack that he needed to go home immediately due to a family emergency. Jack agreed to drive Woodley home.

While traveling on I-85, Jack's truck ran out of gas. Jack called Peter and requested that someone bring him gas. When Kyle Previtire, another employee, and his wife, Alissa Williams, arrived at the scene with two gallons of gas, Jack got out of his truck to ensure Previtire did not scratch his vehicle with the gas can.[1] Previtire and Jack talked outside the vehicle while filling the truck with gas.

From inside Previtire's vehicle, Williams saw Woodley move from the passenger seat to the driver's seat of Small's vehicle.[2] Woodley locked the doors of the truck. Once the truck was

---

[1] Jack's truck was a new Dodge 1500 worth $60,000.

[2] Williams testified that she never saw a firearm or drugs being exchanged that evening.

filled with gas, Jack saw the truck's brake lights come on. Jack walked to the driver's side of the truck, grabbed the driver's side window frame, and asked Woodley, "what's going on?" Jack ordered Woodley to unlock the truck. In response, Woodley rolled the window up, pinning Jack's hands between the window and the door frame, and abruptly drove off. Jack remained pinned to the truck as it moved down the highway. Previtire and Williams followed, driving over 100 miles per hour to catch up to Woodley. Woodley took the next available exit on I-85 but Previtire and Williams were unsure which direction he turned after the exit. Jack fell off the truck when it exited the highway.

When Peter arrived on the scene, Jack lay in the highway and was in "grave condition." Jack was transported to the hospital and remained there for several months. As a result of his injuries, Jack sustained memory and vision issues, difficulty walking, and lost the use of his right arm. Unable to run his business or work at job sites after the incident, Jack can only ride along with Peter and distribute water and Gatorade to employees. Jack was unable to remember his children following the incident. Jack denied that a state trooper stopped to aid him while he was waiting for gas, and he denied that he smoked crack cocaine on the day of the incident.

Woodley testified that he met Jack through a friend and agreed to work as a laborer for Jack's business. In the evening on December 13, 2017, Woodley testified, Jack picked up Woodley in his truck. Woodley claimed that Jack was fidgeting and his eyes were bloodshot; Woodley believed Jack was high on drugs. Woodley testified that the pair drove around for an hour until Jack eventually stopped at a car dealership in Colonial Heights. There, Woodley claimed, Jack stole a car's headlight. Woodley claimed that when Jack returned to the truck, he asked Woodley to drive.

Woodley claimed that while he drove Jack around, Jack smoked a white substance out of a pipe. Woodley testified that after smoking the substance, Jack began to scream, was rude, and

- 3 -

pressured Woodley to smoke the white substance, but Woodley refused. After another hour of driving, Woodley testified, Woodley became increasingly frustrated with Jack. Woodley explained that Jack appeared to be only interested in getting high rather than working. Woodley claimed that while he drove, he asked Jack if he could go home but Jack refused.

Woodley explained that eventually, they stopped on I-85 because Jack said that he had run out of gas. While they were stopped, a state trooper pulled behind Jack's truck, but Jack waved the trooper off. Woodley claimed that during further argument, Jack demanded that Woodley get out of his truck and stated that he had "something for [Woodley]." Woodley maintained that when Previtire and Williams arrived, Jack exited the truck and rummaged through the toolbox while stating, "I got something. I keep a gun on me. I got something for [Woodley]." Woodley claimed to have heard a gun being cocked and turned to see Jack holding a black handgun. Woodley claimed that he slid into the driver's seat and "pulled off" because he "feared for [his] life." Woodley asserted that he did not see nor hear anyone hanging on the truck as he drove. On cross-examination, Woodley admitted that he caused the injuries to Jack because he drove the truck at excessive speeds. He asserted, however, that Jack jumped off the truck. Woodley also acknowledged that a few days after the incident he told officers that he consumed drugs. He claimed that his admission had been a lie because his "bipolar kicked in, and [his] depression kicked in."

In rebuttal, the Commonwealth played a recorded police interview with Woodley.[3] The Commonwealth proffered, without objection, that in a later portion of the recording, Woodley "ask[ed] why he would do anything," asserted that "anyone could have done it," and asserted

---

[3] The record is unclear how much of the interview the trial court watched. The entire interview was admitted without objection. The Commonwealth appears to have played much of the interview conducted by an initial pair of officers from 11:48 p.m. to 12:15 a.m., and proffered portions of a later discussion that occurred between Woodley, one in-person officer, and one officer on speaker phone, from around 12:34 a.m. to 12:58 a.m.

- 4 -

that "[h]e has enemies everywhere." The Commonwealth also proffered, without objection, that later in the recording, Woodley "claim[ed] that he was high and he was scared that night."

Before pronouncing its verdict, the trial court made certain factual findings. The trial court found Woodley to be incredible. The trial court stated that in his police interview, Woodley had denied driving the truck at all and did not mention the presence of a firearm or that he was in fear of his life. Despite the police officers repeatedly telling Woodley that there was a witness who had seen him driving the truck, Woodley had denied driving the truck. The trial court stated that Woodley had in fact never stated to the police that he had driven the truck or mentioned the gun. At trial, however, the court noted, Woodley acknowledged that he drove the truck and heard a gun. The court also noted that on direct examination, Woodley said that he heard a gun, but that on cross-examination, Woodley asserted that he actually observed Jack with a firearm. The court concluded Woodley's "story [was] completely fanciful from beginning to end" and added, "[i]t would take the Court about 30 minutes to go through every fact that's fanciful about this defendant's story."

The trial court found that Woodley drove Jack's truck without permission along I-85 at over 100 miles per hour with Jack pinned in the truck's window. At some point, Jack fell off the truck and was severely injured. The trial court convicted Woodley of all the charges.

At sentencing on March 21, 2023, Charlene Woodley (Charlene), Woodley's mother, testified that Woodley is one of four children and that she and Woodley's father divorced when Woodley was five years old. The divorce was difficult for Woodley, and he only obtained a ninth-grade education. After Woodley turned 18, he was diagnosed with ADHD, bipolar disorder, and schizophrenia. Charlene explained that because of these conditions, Woodley does not understand what is happening to him. Consequently, Charlene interprets situations for

Woodley so that he can more easily understand. Charlene asserted at sentencing that she planned to make sure Woodley made every doctor's and probation appointment.

Woodley proffered that his counselor, Jacinta Mendoza, would testify that she has treated Woodley for seven years and that Woodley's condition improved over the course of his treatment.

Macey Small (Macey), Jack's mother, testified that since the incident she has taken over every aspect of his life. When the accident initially happened, she was the only person Jack recognized; he did not remember his children. Since the incident, Jack's memory has not improved and the children cannot relate to him. Additionally, the physical injuries that Jack suffered continue to affect him. Jack's hips and shoulders are wired together and he has several plates in his head. The surgeries Jack has undergone, and the ones planned, create a financial burden for the family. Macey had to provide for Jack's family and take care of him because he was unable to work.

During closing argument, Woodley's attorney acknowledged that he could not undo the injuries he had inflicted upon Jack. He noted that although Woodley had several criminal convictions, he had never served more than a few months in jail. He requested that the trial court deviate from the guidelines and fashion a sentence that would give Woodley "a chance at a productive life in the future."[4]

The Commonwealth requested that the trial court sentence Woodley to at least the midpoint of the guidelines. The Commonwealth argued that Woodley had been delaying his prosecution for the last five years and asked the court to sentence Woodley in a way that sent a message to the community.

---

[4] Woodley's sentencing guidelines ranged from 11 years, 3 months at the low end to 25 years, 1 month at the high end and a midpoint of 20 years, 11 months.

In allocution, Woodley apologized for harming Jack and claimed that he had not intended to hurt him. He asserted that he was scared that evening and asked the trial court for mercy.

The trial court dismissed the Commonwealth's call to punish Woodley to send a message to the community. Instead, the trial court focused on the choice that Woodley made—to drive Jack's car without permission at over 100 miles per hour while Jack was pinned in the window. That choice, the trial court noted, had a devastating impact on Jack's life. As a result of his injuries, Jack's family has "to take complete care of him at 40 years old," and he could not recall his own children. The court acknowledged Woodley's difficult circumstances but asserted that they did not justify departing from the guidelines.

The trial court sentenced Woodley to 40 years and 24 months of incarceration, with 22 years and 24 months suspended. In Woodley's sentencing order, the court suspended Woodley's driver's license for 99 years or indefinitely for his grand larceny, misdemeanor driving on a suspended license, and misdemeanor reckless driving convictions. Woodley appeals.

ANALYSIS

I. Grand Larceny

A. Motor Vehicle Part or Parts

Woodley first argues that the grand larceny indictment narrowed the object of the larceny to a motor vehicle part or parts. Woodley contends that, as a result, a fatal variance existed between the grand larceny indictment and the Commonwealth's proof at trial and his conviction should be reversed.

"An indictment is a written accusation of a crime and is intended to inform the accused of the nature and cause of the accusation against him." *Scott v. Commonwealth*, 49 Va. App. 68, 73 (2006) (quoting *Hairston v. Commonwealth*, 2 Va. App. 211, 213 (1986)). "The point of an indictment 'is to give an accused notice of the nature and character of the accusations against

him in order that he can adequately prepare to defend against his accuser.'" *Purvy v. Commonwealth*, 59 Va. App. 260, 265-66 (2011) (quoting *King v. Commonwealth*, 40 Va. App. 193, 198 (2003)). Thus, "[t]he accused cannot be convicted unless the evidence brings him within the offense charged in his indictment. . . . [T]he indictment must charge *the very offense* for which a conviction is asked." *Scott*, 49 Va. App. at 73 (second and third alterations in original) (quoting *Williams v. Commonwealth*, 8 Va. App. 336, 341 (1989)). "A conviction for a crime other than the one charged in the indictment is plainly reversible." *Commonwealth v. Bass*, 292 Va. 19, 28 (2016).

While it is true that "[a] fatal variance occurs when the criminal pleadings charge one offense and the evidence proves another," *id.* at 27, a variance is only fatal "when the proof is different [from] and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged," *Scott*, 49 Va. App. at 73 (alteration in original) (quoting *Griffin v. Commonwealth*, 13 Va. App. 409, 411 (1991)). That is, "[n]ot every variance is fatal. A 'non-fatal' variance is one that does not undermine the integrity of the trial and, thus, does not warrant a reversal on appeal." *Purvy*, 59 Va. App. at 266.

Woodley contends that the indictment "narrowed the object of the larceny to 'a motor vehicle part or parts.'" He argues that Code § 46.2-100 defines a "motor vehicle" as a vehicle that is "self-propelled or designed for self-propulsion." He reasons that "the terms 'motor vehicle' and 'parts' must be given separate and distinct meanings or the term motor vehicle would be superfluous." He argues, therefore, that there was a fatal variance between the indictment and the Commonwealth's evidence at trial.

The grand larceny indictment reads:

> THE GRAND JURY CHARGES THAT, On or about December
> 13, 2017 in the said City of Petersburg, and within the jurisdiction
> of the Circuit Court of The City of Petersburg, TONY JAMES
> WOODLEY did steal a motor vehicle part or parts valued at two

hundred dollars ($200.00) or more and belonging to Jack Small, in violation of § 18.2-95/46.2-390 of the Code of Virginia (1950) as amended.

At trial, the Commonwealth proved that as Jack was driving Woodley home, Jack's truck ran out of gas on I-85. Once Previtire and Jack filled the truck's gas tank, Woodley drove off in Jack's truck without his permission.

Assuming without deciding that a variance existed, the variance was not fatal. By stealing Jack's truck, Woodley necessarily stole hundreds, if not thousands, of motor vehicle parts. Stealing those motor vehicle parts was sufficient for grand larceny under the statutory section under which Woodley was charged and convicted, which does not specify the content stolen. *See* Code § 18.2-95. Thus, even if the indictment should be understood as charging Woodley only with stealing motor vehicle parts, the indictment did not charge a "wholly different offense than the one proved" and there was no fatal variance between the indictment and the evidence at trial. *Purvy*, 59 Va. App. at 266-67.

### B. Intent to Permanently Deprive

Woodley further argues that the Commonwealth failed to prove that he intended to permanently deprive Jack of his vehicle. Instead, he argues that he only wished to flee from Jack because he was in fear for his life.

Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Under the rule, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (second alteration in original) (quoting *Johnson v.*

- 9 -

*Commonwealth*, 58 Va. App. 625, 637 (2011)); *see Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

At trial, Woodley never argued that the evidence failed to prove he intended to permanently deprive Jack of his truck. Instead, Woodley asserted a necessity defense. Because this specific argument was not presented to the trial court, we will not consider it on appeal. "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, [Woodley] does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010). Thus, Woodley's argument that the evidence failed to prove he intended to permanently deprive Jack of the truck is procedurally defaulted under Rule 5A:18, and we do not consider it.

## II. Aggravated Malicious Wounding

Woodley argues that the evidence was insufficient to support his aggravated malicious wounding conviction. "[A]ny person [who] maliciously . . . wounds" another person "with the intent to maim, disfigure, disable or kill" and "cause[s]" the victim "to suffer permanent and significant physical impairment" is guilty of aggravated malicious wounding. Code § 18.2-51.2(A).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the

conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Woodley argues that the trial court erred when it rejected his necessity defense to his aggravated malicious wounding charge. On appeal, Woodley concedes that his "use of the vehicle could have been deadly." Nevertheless, he contends that his actions were necessary because Jack produced a firearm and threatened to shoot him. Fearing Jack would shoot him, Woodley says he seized Jack's vehicle and drove away. Woodley asserts that his reaction was the lesser of two evils and that Jack "placed himself in peril by attempting to stop" him.

"The defense of necessity traditionally addresses the dilemma created when physical forces beyond the actor's control render 'illegal conduct the lesser of two evils.'" *Buckley v. City of Falls Church*, 7 Va. App. 32, 33 (1988) (quoting *United States v. Bailey*, 444 U.S. 394, 410 (1980)). The rationale of the defense is that "for reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil" threatened by the imminent harm. *Sam v. Commonwealth*, 13 Va. App. 312, 323 (1991) (quoting 1 W. LaFave & A. Scott, *Substantive Criminal Law* 614 (1986)) (discussing rationale of the defense of duress).

To prove this defense, Woodley had to establish "a reasonable belief that the action was necessary to avoid an imminent threatened harm; . . . a lack of other adequate means to avoid the threatened harm; and . . . a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm." *Warren v. Commonwealth*, 76 Va. App. 788, 807 (2023) (citing *Buckley*, 7 Va. App. at 33).

In determining that the evidence did not prove a defense of necessity, the trial court rejected Woodley's testimony that Jack was armed with a gun and Woodley feared for his life.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)). In addition, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). "[I]n drawing inferences from the evidence, the fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he has lied to conceal his guilt." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019).

The record supports the trial court's credibility determination. As the trial court observed, Woodley made false statements to the police regarding his involvement in the incident. Woodley flatly denied to the police that he had driven the truck after they pulled over on the highway. Woodley repeatedly stated, "I didn't drive the truck." Instead, he emphasized, he "got away" by foot and "ran down the street." Multiple trial eyewitnesses, however, testified that after the truck was pulled over, Woodley got in the driver's seat and drove the truck at a high speed down the highway, dragging Jack along with him. Woodley himself later admitted to

having done so.  It was within the trial court's purview to draw an adverse credibility determination from Woodley's initial provision of this false account of the circumstances surrounding the crime.  *See Rams*, 70 Va. App. at 27.  Similarly, the fact that Woodley omitted any mention of the gun in his initial statement to the police was a factor that the trial court was within its purview to consider in making its credibility determination.  *See Blankenship*, 71 Va. App. at 619.

We owe significant deference to the trial court's credibility determination.  *See Blankenship*, 71 Va. App. at 619 (quoting *Ragland*, 67 Va. App. at 529-30).  Because the court was within its rights to disbelieve Woodley's testimony, it did not err by rejecting Woodley's necessity defense.

The testimony by Jack and two other eyewitnesses provided evidence sufficient to support the trial court's verdict of aggravated malicious wounding.  This evidence, collectively, illustrated the following sequence of events: Jack and Woodley were at a work site when Woodley told Jack he had to leave because of a family emergency.  While driving Woodley home, Jack's truck ran out of gas on I-85.  When the truck was filled with gas, Woodley slid into the driver's seat and started the truck.  Jack asked Woodley what was happening.  In response, Woodley rolled up the window, pinning Jack's hand, and drove down I-85 at nearly 100 miles per hour with Jack dangling from the driver's window.  As Woodley exited the highway, Jack was thrown from the truck and sustained various injuries that left him in the hospital for three months.  Because of the injuries he sustained, Jack has numerous mental and physical limitations and can no longer run his paving business.  Considering the totality of the evidence, a reasonable fact finder could conclude beyond a reasonable doubt that Woodley had maliciously wounded Jack, resulting in permanent and significant physical impairment and was therefore guilty of aggravated malicious wounding.

III. Sentencing

A. Active Sentence of 18 years

Woodley argues that the trial court abused its discretion when it sentenced him to 18 years of active incarceration. "We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

Woodley contends that the trial court failed to consider his mitigating circumstances, such as his mental health diagnoses, his parents' divorce, and mental cognizance when it sentenced him. It was within the trial court's purview to weigh appellant's mitigating evidence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case — those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

The record does not support Woodley's claim that the trial court failed to consider his mitigating circumstances when sentencing him. The trial court heard and specifically considered Woodley's mitigating circumstances. The trial judge stated, in pronouncing his sentence, "So the circumstances . . . really, although they're weighing a little bit on my mind, I can't really roll them over to justify going below the guidelines. Nowhere close can I do that." To be balanced

- 14 -

against Woodley's mitigating circumstances were aggravating factors including Jack's serious injuries. Woodley's sentences were within the ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-11, 18.2-51.2, 18.2-95, 46.2-301, 46.2-852. We find no abuse of discretion, and no reason to disturb the trial court's imposition of its sentence.

### B. Suspending Woodley's Driver's License for 99 years

Finally, Woodley argues that the trial court abused its discretion when it suspended his driver's license for 99 years or indefinitely on his grand larceny, misdemeanor driving on a suspended license, and misdemeanor reckless driving convictions.

The Commonwealth concedes that the trial court's suspension of Woodley's license "for a period of 99 years or indefinitely on the charges of grand larceny, driving on a suspended license, and reckless driving appears to be in excess of statutory bounds." The Commonwealth argues, however, that this Court need only remand the matter for the limited purpose of correcting Woodley's suspended license period without conducting a new sentencing hearing.

The Commonwealth's "admissions embody the ethical duties expected of a legal advocate for the Commonwealth and are held in high esteem." *Joseph v. Commonwealth*, 64 Va. App. 332, 336 n.2 (2015). "Concessions of legal error, however, do not relieve the appellate court of its responsibility to perform its judicial function. While such concessions are entitled to great weight, they do not remove the Court's obligation to conduct its own review." *Id.*; *see Copeland v. Commonwealth*, 52 Va. App. 529, 531-32 (2008).

Upon a conviction of driving on a suspended license, "the court shall suspend the person's license or privilege to drive a motor vehicle for the same period for which it had been previously suspended or revoked." Code § 46.2-301(D). "In the event the person violated subsection B by driving during a period of suspension or revocation which was not for a definite period of time, the court shall suspend the person's license, permit or privilege to drive for an

additional period *not to exceed 90 days*." *Id.* (emphasis added). After a conviction of reckless driving, "the court may suspend the driver's license issued to a person convicted of . . . reckless driving . . . for a period of *not less than 10 days nor more than six months*." Code § 46.2-392 (emphasis added). "When any person is convicted . . . of any theft of a motor vehicle or its unauthorized use, or the theft of any of its parts, . . . the driver's license of the person shall be suspended by the court for a period of *not less than sixty days nor more than six months*." Code § 46.2-390 (emphasis added).

Plainly, the trial court exceeded its statutory authority when it suspended Woodley's driver's license for 99 years or indefinitely upon his conviction of grand larceny, misdemeanor driving on a suspended license, and misdemeanor reckless driving convictions. Because suspension of driver's license is not an added punishment but rather a revocation of a privilege the state granted due to a conviction, *see Corbin v. Commonwealth*, 44 Va. App. 196, 204-05 (2004), we remand this matter for the limited purpose of correcting the period of Woodley's license suspension.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. We remand for the limited purpose of correcting the period of Woodley's driver's license suspension.

*Affirmed and remanded.*